IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| V. | § | Case No. 1:22-cr-00153-RCL |
| | § | |
| RAUL JARRIN | § | |

## RAUL JARRIN'S MEMORANDUM IN AID OF SENTENCING

TO THE HONORABLE ROYCE C. LAMBERTH, SENIOR UNITED STATES
DISTRICT JUDGE FOR THE DISTRICT OF COLUMBIA:

COMES NOW, RAUL JARRIN, Defendant, by and through his attorneys of
record, KENT A. SCHAFFER and JAMES M. KENNEDY, and files this
memorandum to aid the Court in addressing factors set forth in 18 U.S.C. § 3553(a)
when imposing sentence. Following the Supreme Court's decision in *United States
v. Booker*[1], a sentencing court is not bound by the Sentencing Guidelines, but instead
shall consider the nature of the circumstances of the offense and the history and
characteristics of the defendant. *See also 18 U.S.C. § 3661.*

### I. The Court Should Sentence Mr. Jarrin To a Non-Custodian Sentence

Mr. Jarrin respectfully submits that a full and fair consideration of the factors
set forth in Section 3553 fully supports the exercise of leniency in this case. This

---

[1] *United States v. Booker*, 543 U.S. 220, 269 (2005).

Court has the discretion to sentence Mr. Jarrin to 36 months' probation with no amount of incarceration if the Court feels Section 3553 factors warrant such a sentence.

The Supreme Court has recently noted that the objectives set forth in 18 § 3553(a) tells the sentencing judge to consider:

(1) the offense and offender characteristics,

(2) the need for a sentence to reflect the basic aims of sentencing, namely, (a) "just punishment,"

(b) deterrence,

(c) incapacitation,

(d) rehabilitation,

(3) the sentences legally available,

(4) the Sentencing Guidelines,

(5) Sentencing Commission policy statements,

(6) the need to avoid unwarranted disparities, and

(7) the need for restitution.

*Rita v. United* States, 551 U.S. 338 (2007). The provision also tells the sentencing judge "to impose a sentence *sufficient, but not greater than necessary,* to comply with" the basic aims of sentencing. *Id.* (emphasis added); *see also United States v. Reinhart,* 442 F.3d 857, 864 (5th Cir. 2006).

A sentencing court applying the Guidelines in individual cases may vary or depart, either pursuant to the Guidelines or since *Booker*, by imposing a non-Guidelines sentence. *See Rita v. United States, supra.* The court may hear argument by the defense that the Guidelines sentence should not apply because the Guidelines sentence fails properly to reflect § 3553(a) considerations *or perhaps* the case warrants a different sentence regardless. *Id.* (emphasis added). In determining the merits of these arguments, the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply. *Booker*, 543 U.S. at 259-260; *see also United States v. Sachsen Maier*, 491 F.3d 680 (7th Cir. 2007) (post-*Rita*, "The district courts must calculate the advisory sentencing guideline range accurately, so that they can derive whatever insight the guidelines have to offer, but ultimately they must sentence based on 18 U.S.C § 3553(a) without any thumb on the scale favoring a guideline sentence.").

## II. Course of Proceedings

A federal arrest warrant was issued on March 8, 2022, after Mr. Jarrin was charged in a two-count criminal complaint. He voluntarily surrendered to the United States Marshall Service and was released on his own recognizance. On May 3, 2022, a four-count criminal information was filed against Mr. Jarrin. He was arraigned on May 24, 2022.

On February 8, 2023, pursuant to a written plea agreement, Mr. Jarrin entered a plea of guilty to Count 4 of the information, charging the misdemeanor offense of parading, demonstrating, or picketing in a capital building. Mr. Jarrin will come before this Honorable Court on June 23, 2023, for sentencing. At that time, the government will move to dismiss all the remaining counts of the information. The PSR states that the statutory range imprisonment for this misdemeanor is not more than five years' probation and no more than six months confinement. Pursuant to USSG §1B1.9, since the offense is a misdemeanor, the sentencing guidelines do not apply. At the time of the sentencing, Mr. Jarrin will have been under pre-trial supervision under these charges for fifteen months.

### III. Mitigating Sentence Information and § 3553 Considerations

1.   History And Characteristics of Raul Jarrin

The Presentence Investigation Report ("PSR") provides a full description of the history of Mr. Jarrin. For the sake of brevity, counsel will not repeat or highlight what the Court has already received. Counsel does, however, wish to address some areas that the PSR did not cover, or did not cover adequately, or progress since the time of the PSR disclosure. It is very important to note, however, that Mr. Jarrin is a 63-year-old man with absolutely *no* criminal history and has been employed continuously throughout his adult life.

The people that know Mr. Jarrin best know him as a good man who helps others and has always put other people's needs ahead of his own. Mr. Jarrin provides financial and emotional support for his family and friends, and has done so for years, including years prior to this offense. When his mother passed away, Mr. Jarrin moved in with his father and siblings to provide financial and emotional support. As the son of a preacher, Mr. Jarrin is an active member of his church and devotes his time to helping those in need. He is considered by all who know him to be compassionate, selfless, and kind-hearted.

Mr. Jarrin has lived in Houston, Texas since he was in elementary school and became a Naturalized U.S. Citizen in the Southern District of Texas on May 1, 1985. Mr. Jarrin put himself through college, and in 1989 he graduated from the University of Houston with a bachelor's degree in business administration accounting. He holds a certification as an enrolled certifying acceptance agent. Since 2008, Mr. Jarrin has worked at Ernest & Young, LLP, located in Houston. His current title is Tax Senior Accountant. As an accountant, Mr. Jarrin is held to a high ethical standard. His position as an Enrolled Agent often allows him to practice before the IRS, which requires continuing education. He is considered a tireless worker and a valued employee of Ernest & Young, LLP.

As documented in the PSR, Mr. Jarrin was a user of alcohol before his arrest, although he only consumed up to four beers on average. Mr. Jarrin reported

experimenting with marijuana at the age of eighteen but has not used since. Additionally, he has no history of using illicit drugs or any other substances.

While out on bond, Mr. Jarrin has been working on rebuilding and maintaining his relationships with his family and friends. Mr. Jarrin has not had any mishaps or trouble while out on bond and has been in full compliance with all the conditions set. There is nothing in Mr. Jarrin's record that indicates he would break the law again. Mr. Jarrin has set his focus on rebuilding his life. Mr. Jarrin's family is struggling deeply with the situation they are now faced with, and Mr. Jarrin is extremely remorseful for his involvement in this offense. Mr. Jarrin only asks that this Honorable Court exercise its wise judgment in fashioning a sentence appropriate for him.

2.    <u>Aberrant Behavior (USSG § 5K2.20/Policy Statement)</u>

The Court may depart downward under this policy statement only if the defendant committed a single criminal occurrence or single criminal transaction that (1) was committed without significant planning; (2) was of limited duration; and (3) represents a marked deviation by the defendant from an otherwise law-abiding life. *See USSG § 5K2.20 Aberrant Behavior (Policy Statement)*. Mr. Jarrin is a first-time offender, with no criminal history whatsoever and an unblemished background. His failings in his spontaneous decision to enter the Capitol Building and remain inside for fifteen seconds was a single act of aberrant behavior and one that is never likely

to repeat itself. When viewed through the lens of his life as a whole, Mr. Jarrin's conduct provides additional justification for the imposition of a non-custodial sentence.

In the context of all of individuals charged after January 6, 2021, Mr. Jarrin's spontaneous conduct was clearly "committed without significant planning." This is evidenced by the fact that he is seen on video sheepishly entering the building alone carrying nothing and quickly exiting and walking away just fifteen seconds later. Mr. Jarrin did not use any facial coverings, did not use, or possess any dangerous items, such as sticks, flagpoles, or fire hydrants. Mr. Jarrin did not use or possess any type of bullhorn; he was not carrying any sort of signs or flags when he entered the building. Additionally, Mr. Jarrin's conduct was of "limited duration," lasting only fifteen seconds, which is in sharp contrast to the cases cited by the government in their sentencing memorandum. In particular, both defendants John Lammons and Adam Miller stayed inside the Capital Building for an extended period of time, went deep into the building where they proceeded to take the time to smoke what appears to be marijuana. Mr. Miller took the time to take a picture of himself with a marijuana cigarette in his mouth. Mr. Jarrin's conduct is not similar in any respect. Mr. Jarrin's conduct was "a marked deviation from an otherwise law-abiding life," which again is in sharp contrast to the cases cited by the government in their sentencing memorandum. John Lammons, for instance, is a convicted felon having

spent three years in the Texas Department of Criminal Justice for an involuntary manslaughter conviction. Mr. Jarrin, a full-time accountant with a very reputable CPA firm in Houston, Texas, has no criminal history whatsoever. "The aberrance of a criminal act is an encouraged factor for departure." *United States v. Garcia,* 182 F.3d 1165, 1176 (10th Cir. 1999); *United States v. Hued,* 338 F. Supp. 2d 453 (S.D.N.Y. 2004).

3.    Unwarranted Sentencing Disparities

In assessing a sentence for a particular defendant, a sentencing judge should consider the need to avoid unwarranted sentence disparities. *See 18 U.S.C. § 3553(a)(6).* Since passage of the Sentence Reform Act of 1984 ("SRA"), 18 U.S.C. Section 3553(a)(6) has required sentencing judges in federal court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." At the same time, the SRA also required judges to adhere in most cases to the Federal Sentencing Guidelines, leaving (a)(6) with little independent significance. In January 2005, however, the Supreme Court ruled in *Booker* that the Guidelines could no longer be treated as mandatory. Since then, numerous sentencing judges have invoked (a)(6) in a variety of different circumstances to justify non-Guidelines sentences.

The cases cited by the government in their memorandum in support of a sentence of thirty days in custody are markedly different than the case before the

Court. As cited above in *United States v. John Lammons*, 1:22-cr-103(RCL) Lammons has a prior felony conviction for involuntary manslaughter after he shot someone. In the sentencing memorandum filed by the government in Lammons' case, the government argued for thirty days incarceration and 36 months' probation citing very aggravating factors such as Lammons' smoking marijuana while in the Crypt of the Capitol during the commission of the offense and Lammons' continued use of marijuana while on pre-trial release, in violation of his bond conditions. The Government detailed the extended time period that Lammons remained in the Capitol Building, as well as his aggressive interactions with law enforcement while strongly encouraging rioters deep inside the building to "hold their ground." Mr. Jarrin's conduct is entirely different, it is far less aggravating, and to impose the same sentence as Lammons would create an unwarranted sentencing disparity.

Additionally, Mr. Jarrin's case is markedly different from that of *United States v. Adam Miller*, 1:22-cr-191(RCL). This Honorable Court recently sentenced Miller to a sentence of 30 days incarceration and 36 months' probation. The government filed a sentencing memorandum requesting 30 days' incarceration citing an extensive list of aggravating factors, none of which are present in Mr. Jarrin's case. As stated in their memorandum, Miller was in the Capitol Building for over *30 minutes*, he was in the first wave that overtook a line of police officers, and he paraded around in a mob inside chanting "Who's house? Our house!" as he worked

his way to the Crypt. Additionally, he was with a mob wandering down hallways ransacking desks and knocking files onto the floor. The government highlighted Miller's prior arrests and convictions, as well as his "sporadic employment." All these aggravating factors, combined with other factors, resulted in a sentence of 30 days incarceration.

The facts and circumstances of Mr. Jarrin's conduct during and after January 6, as well his history and characteristics, show a drastic and vast difference between the defendants cited by the government in their memorandum. As stated above, Mr. Jarrin has been employed full-time with Ernest & Young, LLP as a CPA for fifteen years, has no criminal history whatsoever and has abided by all conditions while on release. Mr. Jarrin remained just inside the door of the Capitol Building for fifteen seconds before turning around and exiting. He was not hostile in any manner, he was not confrontational in any manner, and he did nothing to encourage or incite others inside or outside. Mr. Jarrin made the foolish mistake of being less than forthcoming with agents when he was first questioned months later. Eventually, however, Mr. Jarrin was fully cooperative to the point of turning over all the articles of clothes he was wearing, the backpack and hat he had on, as well as his cell phone. He has taken responsibility for his conduct, entered a plea of guilty and signed a statement of the offense.

In order to avoid an unwarranted sentence disparity, Mr. Jarrin's sentence should be less than that received by Lammons and Miller. *Cf. United States v. Krutsinger,* 449 F.3d 827 (8th Cir. 2006); *United States v. Walker,* 439 F.3d 890 (5th Cir. 2006); *United States v. Chavez-Diaz;* 444 F.3d 1223 (10th Cir. 2006); *United States v. Hensley,* 363 F.Supp. 2d 843 (W.D. Va. 2005); *United States v. Gray,*362 F.Supp. 2d 714 (S.D.W.Va. 2005).

4.    <u>Raul Jarrin Has Good Family And Community Support</u>

Mr. Jarrin has submitted several character letters in aid of sentencing. These letters are sincere and give the Court an honest, open appraisal of Mr. Jarrin's character. The letters from friends and family demonstrate that Mr. Jarrin is loved and respected by those who know him best. One consideration for a downward departure, pursuant to U.S.S.G. § 5K2.0 is community involvement and support. *See United States v. Turner*, 915 F.2d 1574 (6th Cir. 1990). Solid community ties form a partial basis for a departure. In *United States v. Duarte,* 901 F.2d 1498 (9th Cir. 1990), the district court erred in concluding it could not consider the defendant's character letters as a basis for a downward departure in combination with other factors. It does not appear that the Fifth Circuit has addressed the applicability of this consideration post-*Booker* as applied to 18 U.S.C. § 3553 factors.

Such considerations apply in Mr. Jarrin's case for the independent reason of the character references and support from the community.[2]

---

[2] These types of factors are particularly significant pursuant to *United States v. Booker*, *supra,* and elements presented that the Court can consider under 18 U.S.C. § 3553(a).

5.   <u>Combination Of Factors</u>

When the Sentencing Reform Act of 1984 was enacted, Congress expressly stated that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. §3661. *Booker* reinforces this congressional intent. The *Booker* decision reinforced the Court's authority to use all 18 U.S.C. § 3553 factors in fashioning a reasonable sentence.

Thus, because statutory language leans toward the retention of flexibility in sentencing, courts can exercise flexibility and impose individualized sentences. Individually or in combination with each other, the defendant's circumstances warrant a downward departure from the appropriate guidelines. Several cases reflecting on departures for a combination of reasons beyond that which is represented in the Federal Sentencing Guidelines give this Honorable Court an opportunity to consider the concept of the combination of factors relevant to imposing a sentence below the guideline range. *See United States v. Lieberman,* 971 F.2d 989 (3rd Cir. 1992); *see also United States v. Parham*, 16 F.3d 844 (8th Cir. 1994) (a totality of circumstances may well converge to create the unusual situation not contemplated by the Commission).

13

## IV. Conclusion

Several factors have been presented that warrant this Court's consideration for a mitigated sentence. They fall not only under Guideline considerations for departures, which the Court may consider in an advisory capacity, both for relevant conduct purposes and departures, but also are categorized in a mitigating manner as applied to the additional factors the Court should consider pursuant to 18 U.S.C. §3553(a) *et seq.* Based on the foregoing, Counsel is respectfully requesting that this Honorable Court sentence Mr. Jarrin to a sentence less than the government's recommendation and impose no confinement.

Respectfully submitted,

SCHAFFER KENNEDY JOHNSON & MAYS

By:   */s/ Kent A. Schaffer*
KENT A. SCHAFFER
Federal ID No. 3606
TBA No. 17724300
JAMES M. KENNEDY
Federal ID No. 30414
TBA No. 24008754
JamesKennedy@sckmlaw.com
1001 McKinney Street, St1600
Houston, Texas 77002
Telephone: (713) 228-8500
Facsimile: (713) 228-0034

Attorney for Defendant,
RAUL JARRIN

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 20, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, however, since the pleading is sealed, a copy will be sent to the government via email.

*/s/ Kent A. Schaffer*
KENT A. SCHAFFER